UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                       :    18Cv.3372(DLC)
JOSEPH JORDAN,                         :    08Cr.0124(DLC)
                         Movant,       :
              -v-                      :    OPINION AND ORDER
                                       :
UNITED STATES OF AMERICA,              :
                                       :
                         Respondent.   :
                                       :
--------------------------------------X

DENISE COTE, District Judge:

     Joseph Jordan filed a pro se petition for a writ of habeas
corpus pursuant to 28 U.S.C. § 2255 on April 16, 2018.  For the
following reasons, the petition is denied.


                          **Background**

     This criminal case is over a decade old.  On February 14,
2008, Jordan was indicted in the Southern District of New York.
On August 26, 2008, a twelve-count superseding indictment
("Indictment") was filed against Jordan.  Trial on five counts
of the Indictment, counts which principally charged Jordan with
witness tampering and transmitting threatening communications,
began on October 6, 2008.  On October 16, the jury found Jordan
guilty of each of the five counts.  On September 16, 2009,
Jordan was sentenced to forty years' imprisonment.  On March 9,
2016, the conviction was affirmed by summary order.[1]

---

[1]As described below, many of the arguments that Jordan raised in
his pro se appeal of his conviction are again raised in his
habeas petition.

<u>Trial Evidence</u>

In brief, the evidence at trial established that Jordan met a woman ("Victim") in New York City in July 2007. Their relationship quickly became verbally and physically abusive. On December 3, the Victim and her mother fled New York City, arriving ultimately at her sister's house in Virginia. Jordan located the Victim and harassed and threatened the Victim, her mother, his sister and her brother-in-law with telephone calls. Jordan posted the telephone number for the Virginia residence on the website Craig's List. Strangers began to call that home in response to advertisements for sex and for housing. The relatives changed their telephone number and contacted the police, but Jordan found the new number.

During this same time, Jordan harassed the Victim's former boyfriend as well. Jordan made threatening calls to him and many strangers called the man in response to Craig's List and print advertisements for sex and housing.

Jordan also registered a domain name with the Victim's name and posted messages on the website explaining that he had hurt her physically and emotionally. Fearing for her life, in mid-December the Victim fled to London to stay with her aunt in her aunt's official London residence. The aunt was the Ambassador of Trinidad and Tobago to Great Britain ("Ambassador"). Jordan began calling the Ambassador's residence and the Embassy. The

Ambassador called the police and changed the telephone number of the official residence.  The Victim and the Ambassador then began receiving facsimiles at the Embassy, as well as emails and texts which contained threats to attack the Ambassador's residence and to kidnap the Victim.  Some of the facsimiles contained allegations of misconduct by the Ambassador's husband.

Jordan was arrested in New York on January 11, 2008, and held in custody.  After his arrest, he began writing letters in an unsuccessful effort to discourage the Victim and the Ambassador from testifying against him.  In some of these communications he used his own name; sometimes he forged the names of others, including on an affidavit purporting to come from his ex-wife ("Affidavit").  Among other things, the Affidavit asserted that his ex-wife would testify at trial to the defendant's good character.  The Affidavit's assertions and authenticity were refuted at trial by a testimonial stipulation executed by Jordan, his counsel and the Government.

Jordan also sent fabricated documents to Trinidad and Tobago government offices including a purported press release from "Jordan Family Media Relations."  The press release contained defamatory allegations about the Ambassador's husband and predicted that those allegations would be explored at trial. It asserted that the Ambassador's transfer to a post in the United States "has been delayed pending discussion to resolve

the legal case without trial -- a trial that may prove a huge
embarrassment for the government of Trinidad and Tobago." The
Ambassador testified to the emotional distress and professional
humiliation that these communications caused.

Motion for a New Trial

This Court has issued three prior Opinions in this case.
Of particular significance to this habeas petition, Jordan's
motion to set aside the jury's verdict was denied.[2] United
States v. Jordan, 591 F. Supp. 2d 686 (S.D.N.Y. 2008) ("December
2008 Opinion"). As explained in the December 2008 Opinion, two
attorneys from the Federal Defenders represented Jordan at
trial. Id. at 693. Because the defendant had made several
complaints at trial about his representation, the Court
appointed CJA counsel to represent Jordan after the jury
returned the verdict. Id. at 694. The Court observed that it
did not find the defendant's complaints about his representation
to be well founded, but believed appointment of new counsel was
the appropriate course of action. Id.

---

[2] The other two decisions are the following. An August 21, 2009
Opinion addressed Jordan's pro se motion disputing the Pre-
Sentence Report's calculation of the maximum sentence he could
receive. United States v. Jordan, No. 08cr124 (DLC), 2009 WL
2999753 (S.D.N.Y. 2009). A September 25, 2009 Opinion addressed
Jordan's other pre-sentence requests. United States v. Jordan,
No. 08cr124 (DLC), 2009 WL 3169823 (S.D.N.Y. 2009).

In due course, CJA counsel for Jordan made a motion to set aside the verdict or grant a new trial on several grounds, including that Jordan's trial attorneys were ineffective. CJA counsel attached to his submission nearly 100 pages that Jordan wanted to be considered on the motion, and later submitted an additional 25-page memorandum prepared by Jordan. Id. at 704. Many of the issues raised in those submissions are raised again in this petition.

The pre-sentence motion for a new trial included the following claims that his trial counsel was ineffective. Jordan argued that the representation they provided to him was deficient because his defense counsel compelled him to accept the testimonial stipulation that eliminated the need for his ex-wife to testify at trial; they decided not to contest the issue of identity; they failed to prepare him adequately to testify; they failed to call certain witnesses he had identified for his defense; and generally they did not consult with him sufficiently in preparation for the trial. Id. at 711-12.

In addition to arguments regarding the deficiencies in trial counsel's performance, the motion for a new trial raised other issues relevant to the pending petition. These include challenges to the trial's fairness on the basis of the Government's summation arguments to the jury, the fears

expressed on one occasion by two jurors, and alleged

deficiencies in the jury charge.  Id. at 718-22.

<u>Submissions in Connection with the Petition</u>

Jordan has filed the following materials in connection with

this <u>pro se</u> petition.[3]  On April 16, 2018, Jordan filed a motion

to vacate the judgment with supporting documents.  On May 14,

additional documents in support of his petition and his

affidavit were filed.  On May 30, he filed his memorandum in

support of the petition.  This Opinion principally relies on the

May 30 memorandum as the statement of the issues which Jordan

wishes to include in his petition.  The discussion below

attempts to address each of the principal arguments raised by

Jordan in the memorandum.

The Government's opposition to the motion was filed on July

6, 2018.  On August 17, the Court granted Jordan's request to

receive copies of the documents he had submitted to the Court in

support of his petition.  On August 17, Jordan's time to reply

to the Government's submission was extended to September 21.

---

[3] The petition is timely.  Jordan's conviction became final on
April 17, 2017, when the Supreme Court denied his petition for
certiorari.  Jordan v. United States, 137 S. Ct. 1601, 1601,
reh'g denied, 137 S. Ct. 2287, 2287 (2017); Rosa v. United
States, 785 F.3d 856, 859 (2d Cir. 2015) ("[A] conviction
becomes final upon the denial of a petition for a writ of
certiorari without regard to any subsequent petition for
rehearing.").  Jordan filed his motion on April 16, 2018, just
before the expiration of the one-year limitations period under
28 U.S.C. § 2255(f)(1).

Jordan's reply was received by the Court on October 1, and his special appendix was filed on October 5. On February 13, 2019, Jordan requested appointment of counsel and an evidentiary hearing. On May 7, he requested a certificate of appealability in the event his petition is denied.

## Discussion

Jordan contends in this petition that the two Federal Defenders who represented him at trial provided ineffective assistance. When making a claim of ineffective assistance, a petitioner must show that "defense counsel's performance was objectively unreasonable" and that "the deficient performance prejudiced the defense." Doe v. United States, 915 F.3d 905, 910 (2d Cir. 2019) (citation omitted). "[T]here is no reason for a court to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Garner v. Lee, 908 F.3d 845, 861 (2d Cir. 2018) (citation omitted). When evaluating the prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

1.  Prejudice

Jordan has failed to show that any of the alleged
deficiencies in his attorneys' performance at trial prejudiced
him.  The Government's evidence that Jordan committed the crimes
with which he was charged was substantial.

As the summary order affirming the conviction observed, the
Government's evidence included Jordan's transmission of seven
specific threats, such as the threat that he would take the
Victim "off the planet."  The Court of Appeals observed that the
evidence that Jordan "knew that his communications would be
interpreted as threats was overwhelming and essentially
uncontroverted."  Because Jordan has not shown that the jury
verdict would have been any different if his counsel had
performed differently at trial, this petition can be denied on
that ground alone.  In any event, as described below, Jordan has
also failed to show that his counsel's performance was
constitutionally deficient.

2.  Decision Not to Testify

Jordan asserts that he was precluded from testifying and
that his counsel did not adequately prepare him to testify.
Jordan made this claim in his motion to set aside the verdict,
and it was rejected in the December 2008 Opinion.  591 F. Supp.
2d at 714-17.  On his direct appeal, he also asserted that there
had been a violation of his right to testify.  That claim was

considered and determined by the Court of Appeals to be without merit.

As described in the December 2008 Opinion, Jordan requested and was given an opportunity to consult with independent CJA counsel regarding his right to testify. That attorney assured the Court that Jordan was aware of his right to testify or not to do so. The Court also gave Jordan detailed instructions regarding his right to testify. Jordan, who was an active participant in his defense, had prepared a lengthy outline of his anticipated testimony for his attorneys to review. There was a five-day break in trial proceedings just before the day on which Jordan would have taken the stand and he consulted with his attorneys about his possible testimony during that break. His attorneys also gave Jordan a written outline of the questions they planned to ask him should he decide to take the stand. In the end, fully advised of his rights, Jordan decided not to take the stand.

In this petition, Jordan complains that his trial counsel erred in listing a 1992 prior conviction for assault with a dangerous weapon in their outline of his direct testimony. Assuming that the inclusion of that conviction on the outline was an error, that error does not provide a basis to find that counsel was constitutionally deficient in advising Jordan about his right to testify or in preparing him to take the stand. Nor

is there any basis to find that the error had any impact on his decision not to testify.  This issue was explored in detail in the December 2008 Opinion, and it is rejected again for the reasons explained there.  Id.

3. Jurors

Jordan asserts that his counsel failed to obtain the dismissal of two jurors who mentioned during the trial that they were concerned about Jordan's access to their personal information.  This claim is not properly brought as an ineffective assistance claim through a habeas petition; it is not actually a claim premised on defense counsel's performance. This claim, which challenges the fairness of the trial proceedings, was raised in Jordan's motion for a new trial and rejected in the December 2008 Opinion.  591 F. Supp. 2d at 720. In his direct appeal Jordan also asserted that the Court erred in responding to this juror issue, and the Court of Appeals rejected it on the merits.[4]

This claim arises from the fact that two jurors expressed fear of the defendant the day before deliberations began.  Id. When advised by the Court of the issue, defense counsel moved for a mistrial or, if that were not granted, an individual

_____

[4] Jordan's June 10, 2014 Pro Se Brief, filed with the Court of Appeals at Docket Number 82 ("June 2014 Brief"), raised this claim as issue L at page 118.

interview of the jurors.  Id.  To the extent Jordan believes the

Court erred in its handling of the defense objection, that issue

had to be, and was, raised on direct appeal.

    4.  Government Comment on Jordan's Failure to Testify

    Jordan complains that his attorneys should have but did not

object to a Government argument at summation, which Jordan

inaccurately describes in his petition as an argument that the

defendant "could not" dispute the evidence against him.  He

asserts that the prosecutor's argument was an improper comment

on his failure to testify.[5]  Jordan also argued on direct appeal

that this alleged comment by the Government was a violation of

his rights.[6]  The Court of Appeals rejected this argument on the

merits.

    In his petition, Jordan cites to pages 856-57 of the trial

transcript as the passage containing the objectionable comments

by the Government.  In this part of its summation, the

Government briefly outlined critical evidence on two of the five

counts tried before the jury, pointing out several times that

there was "nothing in dispute" or "no dispute" about portions of

the evidence.  For instance, "there's no dispute that he sent

---

[5] While Jordan's new trial motion made several arguments about
the Government's summation, he did not make this particular
argument.  591 F. Supp. 2d at 718-19.

[6] See June 2014 Brief at pages 135 et seq.

the faxes," referring to Jordan and faxed communications that had been received into evidence.

The Government's summation argument cannot fairly be construed as a comment on the defendant's failure to take the stand in his own defense.  At no point during its summation did the Government refer to Jordan's failure to testify at trial, and the passage to which Jordan points does not contain an implicit comment on the matter.  The Government is entitled to describe the evidence presented during trial and to draw the jury's attention to those facts in dispute and those about which there is little or no dispute.  "Although the government cannot comment on a defendant's failure to testify, it is permissible to draw the jury's attention to the fact that a defendant did not call witnesses to contradict the government's case or support his own theory of what happened."  United States v. Daugerdas, 837 F.3d 212, 227 (2d Cir. 2016).

5.  Witness Tampering Statute:  Counts Four and Five

Jordan makes several arguments regarding the scope of Section 1512(b) of Title 18, United States Code, which is the statute underlying his convictions on Counts Four and Five. Among other things, § 1512(b) makes it a crime for a defendant knowingly to use intimidation, threats, or corrupt persuasion with the intent to prevent the testimony of a person in an official proceeding.  18 U.S.C. § 1512(b).  The jury found that

Jordan knowingly used intimidation and threats with the intent of influencing or preventing the testimony of the Victim and the Ambassador, in Counts Four and Five, respectively. 591 F. Supp. 2d at 700. Jordan made several arguments on direct appeal about these two counts and § 1512(b).[7] The Second Circuit rejected his challenges.

While Jordan has expanded on his protected speech argument in the instant petition, the time to make these arguments was on direct appeal. The constitutional challenge to the statute, which Jordan suggests, was rejected in United States v. Thompson, 76 F.3d 442, 452 (2d Cir. 1996).

Jordan principally makes two arguments about his counsel's performance in connection with the § 1512(b) charges. He contends that his attorneys should have more actively pursued the affirmative defense that the communications on which his conviction was based, such as the press release sent to Trinidad and Tobago government offices and his post-arrest correspondence with the Victim, were "truth-seeking" communications. On the other hand, he also appears to argue that his counsel should not have asked for a charge on the affirmative defense of truth seeking unless counsel were going to argue in support of that defense in the defense summation.

---

[7] See June 2014 Brief at 30-31.

The draft jury charge, distributed to both Jordan and his attorneys before the charging conference, contained a charge on this affirmative defense.  In response to the Court's inquiry, Jordan's counsel requested that the affirmative defense remain in the charge.  Accordingly, the jury was instructed on the affirmative defense.  The Court advised the jury, inter alia, that it must find Jordan not guilty of the crimes charged in Count Four and Count Five if he proved by a preponderance of the evidence that his sole intent was to encourage a person to testify truthfully, and that his conduct in seeking that truthful evidence consisted solely of lawful conduct.  While defense counsel addressed the defense in her opening statement, it is true that there was no direct mention in the defense summation.

The failure by defense counsel to argue on summation that Jordan's communications were intended to seek truthful testimony, as opposed to an effort by Jordan to dissuade witnesses from participating in the trial, does not constitute a failure to represent him effectively.  Defense counsel represented Jordan vigorously.  They were entitled to use their best judgment about what arguments would have the most impact during summation.  United States v. DiTomasso, ___ F.3d ___, No. 17-1699, 2019 WL 3417264, at *9 (2d Cir. July 30, 2019) ("Trial counsel's actions or omissions that might be considered sound

14

trial strategy . . . are ordinarily not viewed as a lapse in professional representation." (citation omitted)); <u>Weingarten v. United States</u>, 865 F.3d 48, 53 (2d Cir. 2017) ("It is the very function of an effective legal counselor to select among the available arguments."); <u>United States v. Delva</u>, 858 F.3d 135, 157 (2d Cir. 2017) ("An attorney's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (citation omitted)). Jordan does not explain how his attorney could have been more effective in pursuing this defense and has not shown that it would have succeeded had they emphasized it further.

6.  Count Five:  Lesser Included Offense

Jordan argues that his counsel should have sought a jury charge on 18 U.S.C. § 1512(d) as a lesser-included offense of Count Five, which was charged under § 1512(b).  In particular, Jordan suggests that the press release sent to the Trinidad and Tobago government offices constituted only "harassment" punishable under § 1512(d), not an offense under § 1512(b).

A defendant is entitled to a lesser-included offense instruction under federal law "only if (1) the elements of the lesser offense are a subset of the elements of the charged offense, and (2) the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater."  <u>United States v. Snype</u>, 441 F.3d 119, 141

(2d Cir. 2006) (citation omitted). "In determining, under the
first prong of the test, whether an offense constitutes a
lesser-included offense of the charged offense," courts compare
"the statutory elements of the offenses in question, and not the
conduct proved at trial." United States v. Diaz, 176 F.3d 52,
101 (2d Cir. 1999) (citation omitted); see also Fed. R. Crim. P.
31(c) (defining lesser offense as "an offense *necessarily*
included in the offense charged"). "Where the lesser offense
requires an element not required for the greater offense," an
instruction on the lesser offense is not required. Schmuck v.
United States, 489 U.S. 705, 716 (1989).

Applying this test, § 1512(d) is not a lesser-included
offense of § 1512(b). Section 1512(d) requires proof that the
defendant (1) intentionally harassed another person, (2) thereby
hindering, delaying, preventing, or dissuading any person, (3)
from attending or testifying in an official proceeding. Section
1512(b), by contrast, requires proof that the defendant (1)
knowingly used intimidation, threatened, corruptly persuaded, or
engaged in misleading conduct towards a person, (2) with the
intent to influence, delay, or prevent the testimony of any
person in an official proceeding. In short, § 1512(d) requires
proof that the defendant engaged in intentional harassment,
while § 1512(b) contains no such element and can instead be
violated through knowing corrupt persuasion or misleading

conduct.  Thus a violation of § 1512(b) does not necessarily
entail a violation of § 1512(d), and no instruction on the
latter would have been appropriate under Rule 31(c).  Jordan's
attorneys therefore committed no error in declining to seek such
an instruction.

It is true that the Second Circuit has, in _dicta_, observed
that the same conduct may be punishable under more than one
subsection of § 1512.  See United States v. Veliz, 800 F.3d 63,
71 (2d Cir. 2015) (holding that solicitation of a person to
murder a witness is punishable under § 1512(b)).  The Second
Circuit suggested that "a defendant who follows a witness's
every move might be guilty of 'intimidation' under subsection
(b) or 'harassment' under subsection (d)."  Id. at 72.  In doing
so, the Second Circuit cited a Ninth Circuit case that held that
§ 1512(d) was a lesser-included offense of § 1512(b).  Id.
(citing United States v. Chaggar, 197 Fed. Appx. 704, 707 (9th
Cir. 2006))).  But, applying the elements-based approach called
for by the Supreme Court, it does not follow that § 1512(d)
constitutes a subset of § 1512(b).  As the Second Circuit has
not more directly addressed the question of whether § 1512(d) is
a lesser-included offense of § 1512(b), and the Ninth Circuit
authority is not binding, it is here concluded that Jordan would
not have been entitled to a lesser-offense instruction.
Further, because the Second Circuit case that Jordan cites here

had not been decided at the time of his trial, his counsel could not have relied upon it.  See Weingarten, 865 F.3d at 53 ("A reviewing court must . . . evaluate an attorney's performance in light of the state of the law at the time of the attorney's conduct."); Sellan v. Kuhlman, 261 F.3d 303, 315-17 (2d Cir. 2001).

In any event, Jordan was not prejudiced by the fact that counsel did not request an instruction on § 1512(d) because -- even had such an instruction been given -- there is no reasonable probability that a jury would have acquitted him of the offense charged in Count Five.  As described above, the press release sent to government offices of the Trinidad and Tobago made defamatory allegations about the Ambassador's husband and predicted that those allegations would be explored at Jordan's trial.  It also asserted that the Ambassador's transfer to the United States had been delayed pending discussions "to resolve the legal case without trial -- a trial that may prove a huge embarrassment for the government of Trinidad and Tobago."

The press release provided compelling evidence that Jordan acted knowingly to intimidate the Ambassador, which requires proof that his threatening words created a reasonable likelihood that the Ambassador would be in fear of harm; to threaten her, which requires proof that the words were designed to arouse fear

that he would cause harm; and to corruptly persuade her, which
requires proof that he acted with wrongful intent while
conscious that his conduct was wrongful.  See United States v.
Johnson, 968 F.2d 208, 211-12 (2d Cir. 1992) (defining
intimidation and threatening); United States v. Quattrone, 441
F.3d 153, 176 (2d Cir. 2006) (defining corrupt persuasion).  The
jury also heard ample evidence that the press release
constituted misleading conduct, which may consist of knowingly
making a false statement; knowingly, with intent to mislead,
inviting reliance on a writing that is lacking in authenticity;
or knowingly using a trick, scheme, or device with intent to
mislead.  See 18 U.S.C. § 1515(a)(3) (defining misleading
conduct).  The jury was instructed that it could find him guilty
of this crime if it were satisfied that he had acted in only one
of these four ways, so long as it was unanimous as to which of
ways the Government had proven that he acted.  In short, even if
Jordan's counsel had performed as he asserts they should have,
there is no reasonable probability that the jury would have
returned a different verdict.  See Garner, 908 F.3d at 871
("[T]o establish prejudice . . . [t]he likelihood of a different
result must be substantial.").

     7.  Count Four:  Jordan's Letters

     Jordan complains that his attorneys erred in not moving to
suppress mail he sent to the Victim following his arrest.

Jordan explains that these letters were part of the evidence supporting Count Four's witness tampering charge.

As described in the December 2008 Opinion, following his arrest, Jordan began to write letters to dissuade the Victim and the Ambassador from testifying against him at trial. 591 F. Supp. 2d at 702. Jordan mailed some of those letters to a friend with directions on how to locate the necessary addresses and instructions to forward them to their intended recipients. Id. at n.15. That friend provided letters to the Government and the friend testified at trial.

Jordan has failed to show that any motion to suppress the correspondence provided to the Government by a third party would have succeeded. Jordan had no expectation that the letters would remain private after they left his possession. United States v. Knoll, 16 F.3d 1313, 1321 (2d Cir. 1994) ("[W]hen one party relinquishes control of a letter by sending it to a third party, the reasonableness of the privacy expectation is undermined."); see also United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004) (suggesting that individuals lack "an expectation of privacy in transmissions over the Internet or e-mail that have already arrived at the recipient").

8. Stipulation

Jordan contends that his attorneys provided ineffective assistance when they stipulated regarding the testimony that his

ex-wife would provide if called as a trial witness. Jordan raised this same issue to attack his trial attorneys' performance in his motion for a new trial, and it can be rejected again for the reasons previously given. 591 F. Supp. 2d at 712-13.

In brief, as part of the evidence offered in support of Count Four, which charged Jordan with using intimidation and threats with the intent of preventing or interfering with the Victim's testimony, the Government introduced into evidence the Affidavit, purportedly from his ex-wife, that Jordan fabricated and sent to the Victim. The stipulation, which Jordan personally executed, made the ex-wife's testimony about the authenticity and accuracy of the Affidavit unnecessary.

As explained in the December 2008 Opinion, there were compelling reasons why Jordan would have wanted to keep his ex-wife from testifying about the Affidavit. Moreover, Jordan not only signed the stipulation that made her testimony unnecessary, but also affirmed to the Court several hours after he executed the stipulation that he stood by it. Id. at 712.

In his petition, Jordan does not acknowledge that he himself signed the stipulation and that he was examined about his execution of the stipulation by the Court. Nor does the petition acknowledge that the ex-wife had flown to New York and was at the courthouse and prepared to testify if the stipulation

had not been executed.  Id.  In sum, there is no basis to find that Jordan's counsel provided him with ineffective assistance regarding the stipulation.

## Conclusion

The Court has considered each of the arguments made by Jordan regarding the performance of his trial counsel and finds no basis for concluding that this petition should be granted on the ground that they provided him with ineffective assistance. The request for a hearing is also denied.

Because Jordan has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c); Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is hereby directed to close this case.

Dated:    New York, New York
          August 30, 2019

_____
DENISE COTE
United States District Judge